```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| LATCHMIE TOOLASPRASHAD, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | Civil Action No. 02-5473 |
| v. | |
| ROBERT WRIGHT, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Latchmie Toolasprashad
F.C.I. Fort Dix
#10975-056
P.O. BOX 7000
Fort Dix, NJ 08640
    Pro Se Plaintiff

Christopher J. Christie
UNITED STATES ATTORNEY
    By: John Andrew Ruymann
        Assistant U.S. Attorney
970 Broad Street
Newark, NJ 07102
    Attorney for Defendants

**SIMANDLE**, U.S. District Judge:

Plaintiff Latchmie Toolasprashad brought this action under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), alleging that Defendants Robert Wright, Dennis Kneiblher, Jeffrey Cremer, Carol Morton, Thoms Blumm, James Gleason, C.J. DeRosa, Jose Curbelo, T.K. Cozza-Rhodes, David Steele, Tara Moran, Banci Tewolde and D.J. Davis, all present or former employees of the Federal Bureaus of Prisons ("BOP") at FCI Fort Dix, violated Plaintiff's constitutional

rights.[1] Defendants filed this motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking dismissal of the Complaint in its entirety.[2] For the reasons explained below, Defendants' motion will be granted and summary judgment will be entered in favor of Defendants.

## I.   BACKGROUND

Plaintiff Latchmie Toolasprashad is an inmate presently serving a life sentence at the Federal Correctional Institution at Fort Dix, New Jersey ("FCI Fort Dix").  At least as early as April 1, 2002, Plaintiff was an inmate worker in the Commissary on the west side of FCI Fort Dix ("Commissary West").  According to the Complaint, while Plaintiff was working in the Commissary, three of Plaintiff's supervisors, Defendants Wright, Kneibhler, and Cremer, harassed and threatened Plaintiff without cause. (Compl. at ¶ 2.)

First, Plaintiff alleges that on April 2, 2002, the three Defendants posted signs restricting access to the Commissary bathroom and water fountain to prison employees.  (Compl. at ¶¶

---

[1] All Defendants, with the exception of Davis, were named in the Original Complaint.  Davis was added as a Defendant in the Amended Complaint.  Defendant DeRosa was dismissed as a defendant by Order dated June 4, 2003, following this Court's review of the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A (1998). On or about October 6, 2004, the Court dismissed Defendant Tewolde in accordance with Plaintiff's request for a voluntary dismissal of that defendant.

[2] For ease of reference, "Complaint" as used herein will refer to the Amended Complaint unless otherwise noted.

3-5.)  Moreover, Plaintiff claims that the three supervisors locked the door between the front and back of the Commissary during store hours, thereby preventing the worker inmates, including Plaintiff, from accessing the water fountain.  And, because Plaintiff was not allowed to bring any water to work with him, Plaintiff argues, Plaintiff had no access to water while at work.  (Comp. at ¶ 10.)  Finally, Plaintiff alleges that he had to work in temperatures above 100 degrees and was "laughed at" when he requested drinking water.  (Compl. at ¶ 9.)  Additionally, Plaintiff alleges that no chairs were made available to Plaintiff while working in the Commissary, despite a medical condition preventing him from standing continuously.  (Compl. at ¶ 40-42.)

On April 6, 2002, Plaintiff filed an Informal Resolution Attempt ("BP8") with Defendant Curbelo, a Correctional Counselor, complaining about the lack of access to restrooms and drinking water, as well as the behavior of Defendants Wright, Kneibhler and Cremer.  (Compl. at ¶ 17, Ex. 1, Att. 7.)  Plaintiff alleges that two days later, on April 8, 2002, he requested use of the restroom and was denied by Kneibhler, Wright and Cremer.  (Compl. at ¶ 13.)  After more than 20 minutes, another supervisor, Aponte, allowed Plaintiff to use the restroom.  Due to the dealy, though, Plaintiff claims he urinated on himself before reaching the restroom.  (Comp. at ¶ 14.)

3

Plaintiff alleges that around April 29, 2002, he was removed from his position at the Commissary, along with three other inmates, in retaliation to his complaints. (Compl. at ¶ 34.) On May 10, 2002, Plaintiff submitted a BP8 requesting to be reinstated as a worker in the Commissary. (Compl. at ¶ 38.) Subsequently, Plaintiff filed a request for administrative remedy ("BP9"), which was denied. (Compl. at ¶ 38.)

On April 4, 2004, Plaintiff filed this complaint pursuant to <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971), alleging the following violations of his rights secured by the Constitution and laws of the United States:

(1) Defendants Wright, Kneibhler, and Cremer for depriving him of access to a bathroom and drinking water at the Commissary; for making disparaging remarks about his race and religious beliefs; for depriving him of a chair to sit on during work; and for retaliating against him for filing grievances by firing him;

(2) Thomas Blumm and James Gleason, who supervised Defendants Wright, Kneibhler, and Cremer, for failing to stop their illegal actions; for obstructing his administrative remedies; and for retaliating against him for taking legal action;

(3) Carol Morton, who was the second-line supervisor of Defendants Blumm and Gleason, for failing to stop the

4

        Guards' illegal actions; for obstructing Plaintiff's administrative remedies; and for retaliating against him for taking legal action;

(4) David Steele, a Correctional Counselor, for removing Plaintiff from his position in the Commissary in retaliation for taking legal action;

(5) Jose Curbelo, Correctional Counselor, for obstructing Plaintiff's administrative remedies;

(6) T.K. Cozza-Rhodes, a Unit Manager, for obstructing Plaintiff's administrative remedies;

(7) Tara Moran, a Legal Assistant at FCI Fort Dix, for obstructing Plaintiff's administrative remedies; and

(8) D.K. Davis, formerly a SIS Lieutenant at FCI Fort Dix, for obstructing Plaintiff's administrative remedies. Additionally, Plaintiff claims all Defendants engaged in a conspiracy to violate his constitutional rights.

On April 20, 2005, Defendants filed a motion for summary judgment, arguing, among other things, that Plaintiff failed to exhaust his administrative remedies as required under 42 U.S.C. § 1997e(a). Plaintiff opposed Defendants' motion by written opposition, to which Defendants filed a reply.

In an Order filed September 27, 2005, Magistrate Judge Joel B. Rosen granted Plaintiff permission to file a supplemental brief in opposition to Defendants' summary judgment motion. On

November 21, 2005, Plaintiff filed a supplemental submission to which Defendants again replied. The Court has considered all of the above and, for the following reasons, concludes that Defendants' motion for summary judgment should be granted in its entirety.

**II. Discussion**

    A.  <u>Standard of Review</u>

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[3] In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986)). The threshold inquiry is whether there are "any genuine factual issues that properly can

---

[3] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>See</u> <u>Liberty Lobby, Inc.</u>, 477 U.S. at 248. A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. <u>Id.</u> Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. <u>Id.</u>

be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

The non-moving party "may not rest upon the mere allegations or denials of" its pleading in order to show the existence of a genuine issue. Fed. R. Civ. P. 56(e). Plaintiff must do more than rely only "upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985) (citation omitted); see Liberty Lobby, 477 U.S. at 249-50. Thus, if the plaintiff's evidence is a mere scintilla or is "not significantly probative," the court may grant summary judgment. Liberty Lobby, 477 U.S. at 249-50.

    B.   Failure to Exhaust the Administrative Remedy Process

Defendant's motion for summary judgment will be granted as to the claims against Defedants Steele, Curbelo, Cozza-Rhodes, Moran and Davis; as well as the claims of conspiracy and retaliatory firing against Wright, Kneiblher, Cremer, Gleason, Blumm and Morton, because Plaintiff failed to exhaust his administrative remedies as required under 42 U.S.C. § 1997e(a).

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e), provides that "[n]o action shall be brought with respect to prison conditions under section 1983, or any other Federal

7

law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e).  The PLRA applies to "all inmate suits about prison life, whether they apply to general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 517 (2002).  The exhaustion requirement is a bright-line rule. Brown v. Croak, 312 F.3d 109, 112 (3d Cir. 2002).  A plaintiff-inmate must exhaust his administrative remedies before filing a suit alleging a constitutional violation, or suffer dismissal of his § 1983 of Bivens claims. Nyhuis v. Reno, 204 F.3d 289, 300 (3d Cir. 2000).

In this case, Plaintiff's claims are properly categorized as complaints with respect to prison conditions.  Plaintiff claims defendants Wright, Kneiblher and Cremer violated his constitutional rights by depriving him of reasonable access to a bathroom and drinking water.  Additionally, Plaintiff claims all Defendants obstructed his administrative remedies and retaliated against him for taking legal action.  Such behavior on the part of prison officials falls squarely into the statutorily defined meaning of prison conditions: "the term 'civil action with respect to prison conditions' means any civil proceedings arising under Federal law with respect to the conditions of confinement or the effects of actions of government officials on the lives of

8

persons confined to prison . . . ." 18 U.S.C. § 3626(g)(2). Thus, complaints about the behavior of prison officials, as well as the obstruction of administrative review, are controlled by the PLRA. Unless Plaintiff raised all of his claims at all levels of the review process they are non-exhausted.

The Code of Federal Regulations sets forth the administrative remedy procedure. 28 C.F.R. § 542.10 et seq. An inmate has not exhausted his available administrative remedies until he has properly submitted his complaints and been denied at three levels. Following an informal request, an inmate may submit an Administrative Remedy Request (BP-9) to the Warden. 28 C.F.R. § 542.14. An inmate who is not satisfied with the Warden's response may submit an Appeal to the Regional Director (BP-10). 28 C.F.R. § 542.15. An inmate who is not satisfied with the response from the Regional Director may submit an Appeal to the General Counsel (BP-11). 28 C.F.R. § 542.15. An inmate may not raise in an appeal issues not raised in lower level filings and may not combine appeals of separate lower level responses into a single appeal. Id.

Here, Plaintiff has not raised all issues at all levels of the administrative review process. As part of his Complaint, Plaintiff submitted copies of his administrative complaints. On April 6, 2002, Plaintiff submitted an informal resolution form (BP-8) against Defendants Wright, Kneibler, Cremer, Morton, Blumm

9

and Gleason, alleging deprivation of access to a bathroom and water, as well as harassment and retaliation for his complaints. (Compl. Ex. 1 Att. 7.) On April 22, 2002, Plaintiff submitted a Request for Administrative Remedy (BP-9), which was denied on June 17, 2002. (Compl. Ex. 1 Att. 4, 5.). On June 18, 2002, Plaintiff submitted a Regional Administrative Remedy Appeal (BP-10), which was denied on July 24, 2002. (Compl. Ex. 1 Att. 2.) On August 2, 2002, Plaintiff submitted a Central Office Administrative Remedy Appeal (BP-11), which was denied on October 10, 2002. (Compl. Ex. 1.)

Additionally, Plaintiff submitted a separate BP-8 on May 6, 2002, against Defendants Wright, Kneibler, Cremer, Morton, Blumm, Gleason and Steele alleging a conspiracy related to the retaliatory firing of Plaintiff from his position in the prison commissary. (Compl. Ex. 2 Att. 4.) On May 21, 2002, Plaintiff filed a Request for Administrative Remedy (BP-9), which was rejected for failure to submit his complaint on only one page. (Compl. Ex. 2 Att 2,3.) Plaintiff resubmitted a BP-9 in the proper form on June 18, 2002. (Compl. Ex. 2 Att. 1.) On July 16, 2002, Plaintiff was informed that his allegations would be reviewed and any action deemed appropriate would be taken. (Compl. Ex. 2.) There is no indication of any further appeal of this complaint.

As the foregoing illustrates, Plaintiff's complaints against Defendants Steele, Curbelo, Cozza-Rhodes, Moran and Davis, as well as his complaints of conspiracy and retaliatory firing against Wright, Kneiblher, Cremer, Gleason, Blumm, and Morton were not exhausted through the administrative remedy process.[4]  To be sure, Plaintiff may not have been able to raise the obstruction of administrative review and conspiracy complaints with his original grievance, since the circumstances leading to this complaint did not arise until after filing his original BP-8.  However, Plaintiff should have submitted a new BP-8, alleging the obstruction of remedial review, in order to exhaust this complaint.  Plaintiff has offered no argument as to why he did not present these complaints through the administrative process and exhaust available levels of review before bringing this suit.  Therefore, Defendants' motion for summary judgment as to Plaintiff's claims of conspiracy and retaliatory firing against Wright, Kneiblher, Cremer, Gleason, Blumm, and Morton will be granted, in addition to all Plaintiff's claims against Defendants Steele, Curbelo, Cozza-Rhodes, Moran and Davis.

---

[4] Plaintiff's complaints of harassment and the deprivation of reasonable access to a bathroom and drinking water against Defendants Wright, Kneiblher, Cremer, Gleason, Blumm, and Morton were raised at all levels of the administrative remedies process and, thus, were exhausted.  These remaining claims will be treated with below.

11

C. <u>Working Conditions and Harassment</u>

Plaintiff's surviving claims that were exhausted through the administrative process include claims that his constitutional rights were violated when he was denied proper access to a bathroom and drinking water; when he was prohibited from sitting on a chair during breaks; and when he subject to harassment by Defendants. Summary judgment as to these claims is appropriate, however, because Plaintiff has failed to present any evidence that the working conditions in the commissary violated the any of his constitutional rights.

The Eighth Amendment to the United States Constitution prohibits punishment "which, although not physically barbarous, 'involve[s] the unnecessary and wanton infliction of pain' or [is] grossly disproportionate to the severity of the crime." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346 (1981) (citations omitted). In order to state a claim for violation of the Eighth Amendment as to prison conditions, a prisoner must prove both an objective and subjective element. <u>Young v. Quilan</u>, 960 F.2d 351, 359-360 (3d Cir. 1992). Objectively, the prisoner needs to show that the conditions were cruel and unusual, falling below "the minimal civilized measure of life's necessities."[5] <u>Rhodes</u>, 452 U.S. at 347. Subjectively, a prisoner must show that a prison official

---

[5] Prison, for practical and ideological reasons, will never be as comfortable or pleasant as life on the outside, nor does the Eighth Amendment guarantee such. <u>Rhodes</u>, 452 U.S. at 347.

acted with deliberative indifference.  <u>Quinlan</u>, 960 F.2d at 359-360 (discussing <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991)).

Looking at the facts here in a light favorable to Plaintiff, Toolasprashad has failed to satisfy the objective element of his Eighth Amendment claims.  First, Plaintiff had reasonable access to a restroom and water fountain.  Though he was prohibited from using the commissary bathroom and water fountain, Plaintiff concedes that he was permitted to use the bathroom and water fountains in his housing unit, located approximately 175 feet from the commissary.  (Pl. Opp. to Facts at 10.)

In any event, even if Plaintiff were occasionally denied bathroom access, as he claims, Plaintiff could not make out an Eighth Amendment claim given the duration of his time spent working in the commissary.  See <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1258 (9th Cir. 1982) (the longer a prisoner is deprived of necessities, the closer it is to an Eighth Amendment violation).  According to Plaintiff's testimony, he typically began work at 10:30 a.m., and would leave between 1:00 p.m. and 2:30 p.m. to attend a substance abuse treatment program.  There, Plaintiff had access to a bathroom and water.  Typically, Plaintiff would then return to work at the commissary after 4:00 p.m., where he would stay until the commissary closed around 7:00 p.m.  (Pl. Dep. at 27-40.)  In short, Plaintiff spent no more than four continuous hours in the commissary on any given day.  Such restrictions do

not rise to the level of an Eighth Amendment violation.  See Vacca v. Scott, 2005 U.S. App. LEXIS 967 (5th Cir. Jan. 19, 2005) (holding repeated denial of permission to use bathroom did not violate Eighth Amendment where it only caused general discomfort and pain and did not require medical attention); Calhoun v. Wagner, 1997 WL 400043 (E.D.Pa. July 14, 1997) (finding no constitutional violation where defendant was in holding for sixty-one hours and provided fluids three times a day).

To be sure, affidavits from fellow prisoners submitted by Plaintiff describe the Guards as bullies, who treated prisoners, inside and outside the commissary, disrespectfully.  This evidence, viewed in a light favorable to Plaintiff, also tends to show that the Defendant Guards were often recalcitrant or slow in granting permission to use bathrooms or water fountains in the prisoners' units.  However, even when viewed favorably to Plaintiff, these proofs fall short of permitting a reasonable juror to find an Eighth Amendment violation.  Likewise, that certain Defendants may have removed chairs from the commissary, leaving inmate workers to sit on the floor during breaks, does not constitute cruel and unusual punishment.  The Eighth Amendment does not constitutionalize a code of civility nor does it prohibit boorish or ignorant conduct by prison staff.

Finally, Plaintiff claims that his constitutional rights were violated when he was repeatedly subject to harassment by

Defendants.  The behavior that Plaintiff was subjected to, while condemnable and unfortunate, does not rise to the level of an Eighth Amendment violation.  The Eighth Amendment protects prisoners from calculated harassment.  <u>Hudson v. Palmer</u>, 468 U.S. 517, 528 (1984).  In order for harassment to violate the Eighth Amendment, it must be more than a few isolated incidents; rather, it must be extended and targeted against a particular prisoner.  <u>Compare</u> <u>Bellamy v. Bradley</u>, 729 F.2d 416 (6th Cir. 1984) (denying prisoner few meals did not amount to harassment), <u>and</u> <u>Prisoner's Legal Ass'n v. Roberson</u>, 822 F. Supp. 185 (D.N.J. 1993) (searching plaintiff three times could not be considered harassment), <u>with</u> <u>Scher v. Engelke</u>, 943 F.2d 921 (8th Cir. 1991), <u>cert. denied</u>, 503 U.S. 952 (1992) (finding harassment where prisoner's cell was searched ten times in nineteen days).  Furthermore, verbal harassment, by itself, does not give rise to a constitutional violation, even if that harassment includes racist taunts.  <u>See</u> <u>Vega v. Philadelphia Sheriff's Dep't</u>, 1986 WL 13479 *1 (E.D.Pa. Nov. 26, 1986) (threatening detainee with gestures or words does not create constitutional violations); <u>Williams v. Pecchio</u>, 543 F. Supp. 878 (W.D.N.Y. 1982) (taunting prisoner with racist epithets did not create Eighth Amendment violation).

   Here, Plaintiff has presented no evidence to suggest a level of harassment sufficient to establish a constitutional violation. According to Mr. Aponte, the Guards "picked on a certain few a

15

little bit more than others" and that Plaintiff was one of those targeted more than others. (Aponte Dep. at 8.) Vito Pagillo, another supervisor at FCI Fort Dix, confirms that Messrs. Wright, Kneibhler, and Cremer were tough, even unruly guards:

> [a]t times they were louder, you know, believe me. I wasn't paying attention what was going on, but you knew there was, how do you say it? It was heated up over there in a different area. You know what I'm saying? There's two different people at the window. Me, my style, and their style or his style and it is not the same.

(Pagillo Dep. at 15.) William Flores, an inmate who worked in the commissary with Plaintiff, submits that the Guards "took a half-a-page poster from a newspaper of the terrorist Osama bin Laden and drew a pair of eye glasses on his face and put the name 'Latch' [Plaintiff's nickname] on bin Laden's face. . . . The picture remained there [door to the commissary] for several days." (Flores Affidavit at ¶12.) Charles Stewart, another inmate, confirms that the Guards used racial epithets against Plaintiff, calling him a "[n]o good Bin Laden ass mother-fucker" and that they joked about when Plaintiff urinated on himself. (Stewart Affidavit.) Also, Plaintiff submits a copy of a complaint he made to prison officials, alleging that Mr. Wright made a threatening gesture toward him from across a road. (Pl. Ex. at 86.)

Though all of Plaintiff's submissions suggest unprofessional behavior by Defendants Wright, Kneibhler, and Cremer, their treatment of Plaintiff does not, as a matter of law, rise to the

16

level of an Eighth Amendment violation.  As discussed, verbal abuse and threatening gestures do not constitute cruel and unusual punishment.  See also Jones v. Culinary Manager II, 30 F. Supp. 2d 491, 498 (E.D.Pa. 1998) ("[V]erbal harassment of a prisoner without appreciable injury is generally insufficient to state a claim under § 1983."); Coyle v. Hughs, 436 F. Supp. 591, 591-92 (D.C. Okl. 1977) (finding no constitutional violation where guard verbally assaulted prisoner).  The evidence suggests the Guards were across the board tough on inmates, and though Plaintiff may have been treated harsher than most, the evidence does not support a claim under the Eighth Amendment because it could not lead a reasonable factfinder to conclude that Plaintiff was deprived of the minimal measure of life's necessities, nor subject to the wanton infliction of pain under Rhodes, 452 U.S. at 346-47.

## III. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment will be granted and the case dismissed.[6]  The accompanying Order will be entered.


December 22, 2005            **s/ Jerome B. Simandle**
Date                         JEROME B. SIMANDLE
                             U.S. District Judge

---

[6] All pending motions will, thus, also be dismissed as moot.