IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

LATCHMIE TOOLASPRASHAD,

                    Plaintiff,            HON. JEROME B. SIMANDLE

          v.                             Civil No. 02-5473 (JBS)

ROBERT WRIGHT, et al.,                   **OPINION**

                    Defendants.

APPEARANCES:

Latchmie Toolasprashad
F.C.I. Fort Dix
#10975-056
P.O. BOX 7000
Fort Dix, NJ 08640
     Pro Se Plaintiff

Christopher J. Christie
UNITED STATES ATTORNEY
     By:  John Andrew Ruymann
          Assistant U.S. Attorney
402 E. State Street
Trenton, NJ 08608
     Attorney for Defendants

**SIMANDLE**, U.S. District Judge:

     Plaintiff brought this action under Bivens v. Six Unknown

Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971),

alleging that Defendants, all present or former employees of the

Federal Bureaus of Prisons ("BOP") at the Federal Correctional

Institution at Fort Dix, New Jersey ("FCI Fort Dix"), violated

Plaintiff's constitutional rights.  Defendants subsequently moved

for summary judgment seeking dismissal of the Complaint, which

motion this Court granted in its entirety in an Opinion and Order

filed on December 22, 2005.  Plaintiff and Defendants filed motions for reconsideration of that decision under Local Civil Rule 7.1(i).  Plaintiff also filed a motion for recusal of the undersigned on May 31, 2006.  For the reasons expressed below, Plaintiff's motion for reconsideration will be granted as to his claim of exhaustion of administrative remedies of his retaliation and conspiracy claims, and denied with respect to all other arguments.  Defendants' motion for reconsideration will be granted, vacating the Court's finding on December 22, 2005 that Plaintiff failed to exhaust his administrative remedies upon his claims of conspiracy and retaliatory firing, and the Court will reach the merits of these claims and find, upon reconsideration, that the Defendants are entitled to summary judgment upon the merits thereof, <u>see</u> Parts III. A. 1 and 2, below.  Plaintiff's motion for recusal will be denied, <u>see</u> Part IV, below.[1]

## I.   <u>BACKGROUND</u>[2]

Plaintiff Latchmie Toolasprashad is an inmate presently serving a life sentence at FCI Fort Dix.  As early as April 1, 2002, Plaintiff was an inmate worker in the commissary on the west side of FCI Fort Dix ("Commissary West").  According to the

---

[1] Plaintiff's pending motion to amend will be decided in a separate opinion.

[2] The facts of this case were set forth at length in the Court's December 22, 2005 Opinion, and are not repeated in their entirety herein.

2

Complaint, while Plaintiff was working in the commissary, three of his supervisors, Defendants Wright, Kneiblher, and Cremer, harassed and threatened him without cause.  (Compl. at. ¶ 2.)  In particular, Plaintiff alleges Defendants denied him access to the commissary restroom and water fountain.  Plaintiff also claims that no chairs were made available to him while working in the commissary, despite a medical condition preventing him from standing continuously.  (Compl. at ¶ 40-42.)  Additionally, Plaintiff alleges that around April 29, 2002, he was removed from his position at the commissary, along with three other inmates, in retaliation for his complaints. (Compl. at 34.)

Plaintiff submitted his Complaint on November 14, 2002, and it was partially dismissed and otherwise permitted to go forward past initial screening under 28 U.S.C. § 1915 by Opinion and Order filed June 4, 2003.  Defendants subsequently moved for summary judgment on April 20, 2005, seeking dismissal of the Complaint in its entirety.  By Opinion and Order dated December 22, 2005, this Court granted Defendants' motion.  Defendants filed a motion for reconsideration on January 9, 2006, and Plaintiff filed a reconsideration motion on January 11, 2006. The parties have made written submissions in connection with these motions which the Court has considered.

## II.  <u>STANDARD OF REVIEW</u>

Local Civil Rule 7.1(i) of the United States District Court, District of New Jersey, governs the instant motion for reconsideration.  That rule requires that the moving party set forth the factual matters or controlling legal authority that it believes the court overlooked when rendering its initial decision.  L. Civ. R. 7.1(i).  Whether to grant reconsideration is a matter within the district court's discretion, but it should only be granted where such facts or legal authority were indeed presented but overlooked.  <u>DeLong Corp. v. Raymond Int'l, Inc.</u>, 622 F.2d 1135, 1140 (3d Cir. 1980), <u>overruled on other grounds by</u> <u>Croker v. Boeing Co.</u>, 662 F.2d 975 (3d Cir. 1981); <u>Williams v. Sullivan</u>, 818 F. Supp 92, 93 (D.N.J. 1993).

A "motion for reconsideration is not a vehicle to reargue the motion or to present evidence which should have been raised before." <u>Bermingham v. Sony Corp. of America, Inc.</u>, 820 F. Supp. 834, 856-67 (D.N.J. 1992), <u>aff'd</u>, 37 F.3d 1485 (3d Cir. 1994).  A motion for reconsideration is improper when it is used solely to ask the court to rethink what it has already thought through rightly or wrongly.  <u>Oritani Savings & Loan Assoc. v. Fidelity & Deposit Co.</u>, 744 F. Supp. 1311, 1314 (D.N.J. 1990) (citations omitted).  Finally, a motion for reconsideration does not allow a party to "simply change [] theories and [try] again," thus giving

that party "a second bite at the apple."  <u>Bhatnagar v. Surrendra</u>
<u>Overseas Ltd.</u>, 52 F.3d 1220, 1231 (3d Cir. 1995).

III.  **<u>DISCUSSION</u>**

   A.   **Exhaustion of administrative remedies regarding
        Plaintiff's retaliation and conspiracy claims**

     Defendants argue that the Court overlooked the Declaration
of Roberta Truman dated April 20, 2005, detailing the
administrative remedy requests filed by the Plaintiff while at
FCI Fort Dix between September 2000 and March 2005.[3]  (Defs.' Br.
at 3.)  Plaintiff similarly argues that the Court overlooked
various documents in concluding that the administrative remedies
regarding his retaliation and conspiracy claims were not
exhausted.  (Pl.'s Br. at 1.)

     A review of Roberta Truman's Declaration indicates that
Plaintiff did exhaust his retaliation and conspiracy claims.  An
inmate has not exhausted his available administrative remedies
until he has properly submitted his complaints and been denied at
three levels.  Following an informal request (BP-8), an inmate
may submit an Administrative Remedy Request (BP-9) to the warden.
28 C.F.R. § 542.15.  An inmate who is not satisfied with the
Warden's response may submit an Appeal to the Regional Director

_____

     [3] Roberta Truman is an Assistant Regional Counsel in the
Northeast Regional Office of the Federal Bureau of Prisons.
Between August 1992 and December 2000, she served as the Attorney
Advisor for the Federal Correctional Institution in Fairton, New
Jersey.

(BP-10).  28 C.F.R. § 542.15.  An inmate who is not satisfied with the response from the Regional Director may submit an Appeal to the General Counsel (BP-11).  28 C.F.R. § 542.15.

Here, Plaintiff properly submitted his complaints and was denied at all three levels.  Plaintiff filed an informal request on May 10, 2002 and subsequently filed a BP-9 with the warden on May 21, 2002.  (Truman Decl., April 20, 2005, Ex. 16.)  The request was rejected for exceeding the page limit (id. at Ex. 17) and Plaintiff re-filed the BP-9 on June 18, 2002 (Id. at Ex. 18).  Plaintiff's request was denied on July 16, 2002 (id. at Ex. 19) and he appealed by filing a BP-10 on July 18, 2002 (Id. at Ex. 20).  Plaintiff's appeal to the Regional Director was denied on August 23, 2002 (id.) and he appealed to the General Counsel (BP-11) on August 30, 2002 (Id. at Ex. 21).  The appeal was denied on October 24, 2002.

Based on the foregoing, Plaintiff did in fact exhaust his administrative remedies as to his claims for retaliation and conspiracy.[4]  The Court must now evaluate whether summary

---

[4] Defendants also argue that the Court overlooked controlling authority concerning the exhaustion of administrative remedies of Plaintiff's retaliation and conspiracy claims in its December 22, 2005 Opinion by failing to analyze them under Ray v. Kortes, 285 F.3d 287, 295 (3d Cir. 2002).  In Ray, the Third Circuit held that "failure to exhaust [an administrative remedy] is an affirmative defense to be pleaded by the defendant."  Id. at 295.

In their motion for summary judgment, Defendants argued that the "Plaintiff did not exhaust his administrative remedies on his claim that Defendants obstructed his administrative remedies and

judgment is appropriate on the merits.  The Court will discuss the retaliation and conspiracy claims separately.  For the following reasons, the Court concludes that summary judgment is appropriate.

### 1. **Plaintiff cannot establish a claim of retaliation**

Plaintiff claims that his constitutional rights were violated because the Defendants, specifically Wright, Kneiblher, and Cremer, retaliated against him for filing grievances against them.

In order to prove a claim for retaliation, a plaintiff must demonstrate that (1) he engaged in protected activity; (2) he was subjected to adverse actions by a governmental actor; and (3) the protected activity was a substantial motivating factor in the governmental actor's decision to take adverse action.  See Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997)(citing Mt. Healthy U. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)).  To prove the second element, a plaintiff must show that the actions taken by the government were sufficient to deter a person of "ordinary firmness" from exercising his constitutional rights. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Typically, in deciding the third element, a court should only consider the

___

on his claims against Defendant Davis."  (Defs.' Br. in Supp. of Mot. for Summ. J. at 8.)  Defendants did not raise exhaustion as a defense to Plaintiff's retaliation and conspiracy claims. Therefore, Defendants did not meet their burden under Ray and summary judgment should not have been granted on that basis.

subjective intent of the party - regardless of whether a legal reason existed for the action.  If the government's intent was to retaliate, it will have violated the constitution.  Id. at 161. See Mt. Healthy, 429 U.S. at 285 (holding that a non-tenured teacher could sue for retaliation if he was fired for exercising his free speech, even if there existed legitimate reasons for removal).  However, in the context of inmate lawsuits alleging retaliation, the third prong must be examined differently.  In Rauser v. Horn, the Third Circuit laid out an alternative analysis:

> [O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.

Id. at 333.  Since Defendants do not contest the first element, that Plaintiff was engaged in protected activity, Plaintiff must present evidence that he was subject to adverse action by the government, that the protected activity was a substantial motivating factor in the government's actions, and that FCI Fort Dix did not have any penological reasons for taking its actions.

In support of his claim, Plaintiff presents affidavits and depositions attempting to show that he was subject to retaliation, specifically by Wright, against whom he had filed a grievance in November 2000.  (Pl.'s Opp. to Defs.' Mot. for Summ. J. at 20).  Richard Aponte testified that Wright, prior to

starting as a guard in the commissary, called him requesting the
removal of Toolasprashad: "I remember him [Wright] calling once
asking for us to remove you and we came and told him, no, because
we needed you there.  What it sounded like he was just - he just
didn't want you there, period."  (Aponte Dep. at 15-20).[5]  In
addition, Charles Stewart, an inmate working at the Commissary
West, declared that Kneiblher told him that Toolasprashad had
been fired because he "filed on C.O. Wright and went to the
Associate Warden and complained about Wright's behavior."
(Stewart Aff.).  Another inmate, Stephen Mitchell, declared that
he was told by various staff members that Wright had requested
Plaintiff be removed from his position at the Commissary West.
(Mitchell Aff. at ¶ 4.)  Paul Ebanks also claims that he was
threatened with removal if he filed grievances against the
guards: "Mr. Kneiblher brought up if I wanted to be fired that I
should go talk with Toolasprashad and find out what happened to
[him] for filing complaints against him and other staff...."
(Ebanks Aff. at ¶ 5.)

    Viewing the evidence in the light most favorable to the
Plaintiff, as required by the summary judgment standard in Fed.
R. Civ. P. 56, this Court finds that Plaintiff has adduced

--------

    [5] Richard Aponte was assigned as a Material Handler
Supervisor to Commissary West during April 2002.  He served as
one of Toolasprashad's supervisors between April 1, 2002 and
April 26, 2002.

evidence from which a reasonable jury could find that his exercise of a right to file a grievance was a substantial motivating factor in the challenged decision to remove Plaintiff from his commissary job.  The Defendants allege, however, that he would have been removed from this position even absent any retaliation because of a legitimate penological interest, <u>see Rauser v. Horn</u>, <u>supra</u>, for reasons now discussed.

The Defendants have presented evidence that Plaintiff was subjected to policies that were implemented for penological purposes, and therefore has rebutted Plaintiff's retaliation claim.  First, Plaintiff, along with three other inmates working in the commissary, were removed pursuant to an unwritten policy at FCI Fort Dix, which mandated that inmates should not be at any job longer than a year.  The purpose of this policy of transferring inmates after a year was to discourage fraternization between prison employees and inmates.  (Morton Aff. at ¶ 17.)  An affidavit by David Steele, a correctional counselor at FCI Fort Dix responsible for assigning positions to inmates, states that "when the policy was in effect, the Job Assignment Committee would routinely move an inmate to another position if staff in the inmate's work location advised that the inmate was in his job more than one year and that he should be transferred for that reason." (Steele Aff. at 2).  The power to transfer lay not with Plaintiff's immediate supervisors (<u>i.e.</u>,

Wright, Cremer, or Kneiblher) but with Mr. Steele.  (<u>See</u> Pagillo
Aff. at 16-17 stating, "We [the direct supervisors of inmate
workers] didn't have the authority to hire and fire inmates.".)

While the Plaintiff's submissions may be sufficient to prove
that Wright hoped to retaliate or intended to retaliate, they do
not rebut Defendants' claims that the transfer policy, whether
written or unwritten, was adopted for practical reasons and
applied to him in due course.  Plaintiff does not dispute the
existence of the one-year transfer policy and the fact it was
applied to him and to others alike; indeed, Plaintiff had worked
in the commissary for fifteen months before he was reassigned.
(Truman Decl. ¶ 4; Ex. 2.)  The Defendants have established that
the one-year rule has a legitimate penological basis in avoiding
fraternization among inmates and staff that becomes more likely
in a longer placement.  Thus, there exists no issue of material
fact from which a reasonable jury could decide in Plaintiff's
favor that his transfer occurred as retaliation for his exercise
of the right to file grievances.  Summary judgment will be
granted in favor of Defendants upon Plaintiff's retaliation
claim.

### 2. Plaintiff cannot establish a claim for conspiracy

Next, Plaintiff claims that Defendants engaged in a
conspiracy to deprive him of his rights.  However, as noted in
the Court's Opinion of December 22, 2005, Plaintiff has

established no constitutional violation and therefore cannot make a claim for conspiracy.

A claim for conspiracy can be made either under <u>Bivens</u> or 42 U.S.C. § 1985.  To state a claim under <u>Bivens</u>, a plaintiff must "establish (1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." <u>Ting v. U.S.</u>, 927 F.2d 1504, 1512 (9th Cir. 1991).  To state a claim under 42 U.S.C. § 1985, the plaintiff must allege "a (1) conspiracy (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons...[of] equal protection of the laws (3) an act in furtherance of a conspiracy and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." <u>Lake v. Arnold</u>, 112 F.3d 682, 685 (3d Cir. 1997).

The Plaintiff cannot prevail on a conspiracy claim because he has not been deprived of any federally protected right, a necessary element in proving a conspiracy.  As noted in the Court's Opinion of December 22, 2005, Plaintiff has not presented any evidence amounting to a constitutional violation.  Therefore, no reasonable jury could find these Defendants conspired against Plaintiff to deprive him of a federally protected right.

Plaintiff's conspiracy claim, both under <u>Bivens</u> and § 1985, will be dismissed.

### B. Exhaustion of administrative remedies regarding claim for obstruction of administrative remedies and claims against Defendant Davis

Plaintiff argues that the Court overlooked documents and controlling authority relating to the exhaustion of administrative remedies of Plaintiff's claims for obstruction of the administrative remedy process and his claims against Defendant Davis.  Plaintiff contends that "defendants did not opposed [sic] plaintiff that he failed to exhaust administrative remedy with the exception of Moran and Davis."  (Pl.'s Mot. for Reargument at 1.)

First, Plaintiff's statement is factually inaccurate. Defendants argued that Plaintiff failed to exhaust his administrative remedies on his obstruction of administrative remedies claim and on his claims against Davis.  Defendants' objection as to Plaintiff's failure to exhaust his obstruction of administrative remedies claim related to Defendants Gleason, Blum, Morton, Curbelo, Cozza-Rhodes, Moran, and Davis, not just Moran.  (Defs.' Br. in Supp. of Mot. for Summ. J. at 8).

Secondly, the Plaintiff is mistaken that the Court did not consider certain documents regarding these claims.  That the Court did not explicitly detail the administrative remedies filed by the Plaintiff regarding these two claims does not mean that

the Court failed to consider those documents in reaching its
conclusion.  In fact, the Court did consider all relevant
documents and correctly concluded that Plaintiff failed to
exhaust his administrative remedies on his obstruction of
administrative remedies claims and his claims against Davis.  On
June 16, 2002, Plaintiff filed two BP-10's with the Regional
Director concerning several issues, including the obstruction of
administrative remedies.  Both were rejected by the Regional
Director for raising more than one related issue and for failing
to file a BP-9 with the warden.  (Truman Decl. at Ex. 22.)
Plaintiff did not raise this issue at all levels of the
administrative review process and it is therefore not exhausted.

Regarding his claims against Defendant Davis, Plaintiff
filed a BP-9 on July 26, 2005.  (Pl.'s Sur Reply to Defs.' Mot.
for Summ. J. Ex. 2.)  Upon receiving a response from the warden,
Plaintiff filed a BP-10 with the Regional Director on August 23,
2005 (Pl.'s Req. to Withdraw Mot. to Add a Def. Ex. 6) and a BP-
11 with the General Counsel on September 28, 2005 (Id. at Ex. 9.)
Both the BP-10 and the BP-11 were rejected as being untimely.
(Id. at Ex. 8, Ex. 11).  Because his BP-10 and BP-11 were
rejected for untimeliness, Plaintiff was not denied at all levels
of the review process and did not exhaust his claims against
Defendant Davis.

14

Additionally, Plaintiff argues that the Court overlooked controlling authority holding that a Plaintiff need not exhaust all of his administrative remedies if he has obtained all available relief and is satisfied with the result.  (Pl.'s Resp. to Defs.' Mot. for Reargument at 3).  However, Plaintiff did not present these authorities in his submissions to the Court during the summary judgment proceeding.  Under L. Civ. R. 7.1(i), the district court can only consider, in a motion for reconsideration, facts or legal authority what were indeed presented but overlooked.  DeLong Corp., 622 F.2d at 1140, overruled on other grounds by Croker, 662 F.2d 975; Williams, 818 F. Supp. at 93.

In any event, even if presented, Plaintiff's argument is without merit.  In Ross v. County of Bernalillo, the Tenth Circuit held that "[o]nce a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted.  Prisoners are not required to file additional complaints or appeal favorable decisions in such cases.  When there is no possibility of any further relief, the prisoner's duty to exhaust available administrative remedies is complete."  365 F.3d 1181, 1187 (10th Cir. 2004).  Similar conclusions were reached in McGrath v.

Johnson, 67 F. Supp. 2d 499, 510 (E.D. Pa. 1999) and Brady v. Attygala, 196 F. Supp. 2d 1016, 1021 (C.D. Cal. 2002).[6]

Plaintiff incorrectly concludes that the administrative remedy process was complete with the warden's response to his BP-9 filed on July 26, 2005 and that no further relief was available.  In his BP-9, Plaintiff specifically requested that Defendant Davis be suspended or terminated.  (Pl.'s Sur Reply to Defs.' Mot. for Summ. J. Ex. 2.)  The warden's response merely indicated that the allegations were "under review" and that "[a]ny action deemed appropriate will be taken."  (Id. at Ex. 3.) The response did not grant the relief sought by the Plaintiff nor did it indicate the investigation would be resolved in his favor. In fact, Plaintiff demonstrated his own dissatisfaction with the response by appealing to both the Regional Director and the Central Office.  (Pl.'s Req. to Withdraw Mot. to Add a Def. Ex. 6, Ex. 9.)  Therefore, Plaintiff failed to exhaust his administrative remedies on his obstruction of administrative remedies claim.

---

[6] Plaintiff's additional claim that Bivens allows a plaintiff to sue for money damages without exhausting the remedy process is without merit.  See Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000) and Booth v. Churner, 206 F.3d 283 (3d Cir. 2000).

C.   **Court did not overlook controlling authority nor relevant evidence regarding Plaintiff's Eighth Amendment claims**

Plaintiff contends that the Court overlooked evidence and exhibits introduced by the Plaintiff regarding his claims that, while working at Commissary West, he was denied access to a restroom and a water fountain, and that he was continually harassed by his supervisors.  The Plaintiff is mistaken as to this claim.  The Court thoroughly considered the Plaintiff's submissions to the Court, including his deposition, as well as the affidavits submitted by his fellow inmates.  (Court's Op. 13-14.)  The Court took into account the deposition of Richard Aponte and Vito Pagillo, a supervisor at FCI Fort Dix, and the statements of inmates William Flores and Charles Stewart. (Court's Op. 15-16).  Additionally, the Court considered the poster placed on the door to the commissary depicting the face of Osama bin Laden with the Plaintiff's nickname written on it and the various racial epithets allegedly directed at the Plaintiff by the guards.  (Court's Op. 16.)  Having considered all of Plaintiff's submissions, the Court found that neither the working conditions at the commissary nor Plaintiff's alleged harassment amounted to cruel and unusual punishment in violation of the Eighth Amendment.  As noted, that the Court did not explain each and every affidavit and declaration in its Opinion does not mean

that it failed to examine these documents in making its determination.

Plaintiff's mere disagreement with the Court's outcome is not sufficient to justify a motion for reconsideration.  The purpose of L. Civ. R. 7.1(i) is to allow a district court the opportunity to consider factual matters or controlling legal authority that were presented, but overlooked, when rendering its initial decision, and not to allow a party to take "a second bite at the apple."  Bhatnagar, 52 F.3d at 1231.  The Court considered all relevant documents and legal authority in concluding no Eighth Amendment violation occurred.[7]  Accordingly, the prior ruling stands.

## IV.  **PLAINTIFF'S MOTION FOR RECUSAL**

Lastly, Plaintiff now argues that this Court's alleged bias and prejudice against prisoners prohibits it from acting impartially and requests that the undersigned be recused.  This Court finds Plaintiff's arguments for recusal without merit.

Under 28 U.S.C. § 455(a), judges have an affirmative duty to recuse themselves when a reasonable person with knowledge

---

[7] Plaintiff also asserts a claim that Defendants Wright, Kneiblher, and Cremer engaged in the destruction of government property.  However, Plaintiff does not have standing to bring this claim since he does not satisfy the standing requirements established in McConnell v. Fed. Election Comm., 540 U.S. 93 (2003).  The removal of chairs from the commissary as relates to Plaintiff's Eighth Amendment claims was also thoroughly addressed in the Court's Opinion of December 22, 2005.

of all the facts would conclude that the judge's impartiality might reasonably be questioned.[8]  Liteky v. United States, 510 U.S. 540, 548 (1994).  A judge's prior adverse ruling cannot alone show the bias necessary for disqualification under 28 U.S.C. §455(a).  See, e.g., Byrne v. Nezhat, 261 F.3d 1075, 1103 (11th Cir. 2001); United States v. Pearson, 203 F.3d 1243, 1277 (10th Cir. 2000); Leslie v. Grupo ICA, 198 F.3d 1152, 1160 (9th Cir. 1999); United States v. Arena, 180 F.3d 380, 398 (2d Cir. 1999); Matter of Hipp, Inc., 5 F.3d 109, 116 (5th Cir. 1993).  This is true even if the judge consistently made adverse rulings against the party.  McCalden v. California Library Assoc., 955 F.2d 1214, 1224 (9th Cir. 1990); United States v. Mobile Materials, Inc., 881 F.2d 866, 877 (10th Cir. 1989).  An adverse decision, even if it is adverse on all issues raised, is not evidence of bias, especially when it is supported by the law and facts.  Crenshaw v. Hodgson, 24 Fed. Appx. 619, 621 (7th Cir. 2001) (citing Gleason v. Welborn, 42 F.3d 1107, 1112 (7th Cir. 1994); Byrne, 261 F.3d at 1103).

_____This Court is unaware of any reason why it would not or could not treat either Plaintiff or Defendants in a fair and impartial manner in this matter.  This Court, while not

---

[8] 28 U.S.C. § 455(a) reads in relevant part: "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

infallible, has done its best to manage and adjudicate this case, and has attempted to be responsive to Plaintiff's concerns, giving considerable latitude to his efforts since Plaintiff proceeds without the benefit of counsel.  Plaintiff has not set forth any credible facts that demonstrate that this Court has displayed favoritism to the Defendants or antagonism to the Plaintiff.  There is no conflict of interest present and this Court has not shown any animus toward the Plaintiff.  Indeed, the Court harbors no animus against him.  Plaintiff's disagreement with this Court's Opinion granting summary judgment in favor of the Defendants and his evidently sincere but misplaced belief that this Court overlooked evidence are not grounds for recusal. See Securacomm Consulting, Inc., v. Securacom Inc., 224 F.3d 273, 278 (3d Cir. 2000)(holding that a "party's displeasure with legal rulings does not form an adequate basis for recusal."); see also Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir. 1990)("Disagreement with a judge's determinations certainly cannot be equated with the showing required to so reflect on his impartiality as to dictate recusal.").  Therefore, Plaintiff's motion for recusal will be denied.

## V.   CONCLUSION

For the above stated reasons, Defendants motion for reconsideration will be granted and Plaintiff's motion for reconsideration will be granted in part and denied in part.  Upon the merits, the Court readopts its Opinion and Order of December

22, 2005, except it now finds that Plaintiff indeed exhausted his
available remedies with respect to his claims of conspiracy and
retaliatory firing and, upon the merits, the Court grants summary
judgment in favor of Defendants upon these claims.  Plaintiff's
motion for recusal will be denied.  The accompanying Order will
be entered.


**August 8, 2006**                      **s/ Jerome B. Simandle**
DATE                                JEROME B. SIMANDLE
                                    U.S. District Judge