```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| LATCHMIE TOOLASPRASHAD,<br><br>              Plaintiff,<br><br>      v.<br><br>ROBERT WRIGHT, et al.,<br><br>              Defendant. | Civil Action<br>No. 02-5473 (JBS)<br><br>MEMORANDUM OPINION |

**SIMANDLE**, **District Judge**:

   This motion is before the Court upon another motion of Plaintiff for reconsideration of this Court's summary judgment decision and seeking to reopen this matter [Docket Entry No. 212.]  This Court, having considered Plaintiff's submission and Defendants' opposition, makes the following findings:

1.   Plaintiff Latchmie Toolasprashad ("Plaintiff") filed a civil rights complaint ("Complaint") on November 14, 2002, pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), alleging that Defendants, present or former employees of the Federal Bureau of Prisons ("BOP") at the Federal Correctional Institution at Fort Dix, New Jersey ("Facility"), violated Plaintiff's constitutional rights.[1]  See Docket Entry No. 1.

---

   [1]  Plaintiff is a very frequent, repetitive, and prolix litigant.  A few of Plaintiff's many legal actions were discussed by this Court in its recent opinion issued in Toolasprashad v. Grondolsky, 07-5157 (JBS), Docket Entry No. 11, at 3, listing

2.   Plaintiff is an inmate presently serving a life sentence; he has been housed at the Facility for a substantial period of time.  During spring of 2002, Plaintiff was working in the Facility's commissary.  According to the Complaint, while Plaintiff was working in the commissary, three of his supervisors harassed him; eventually, Plaintiff lost his commissary job.  See id. ¶¶ 2, 34, 40-42.

3.   Plaintiff's Complaint was partially dismissed and otherwise permitted to go forward past initial screening by this Court's Opinion and Order filed on June 4, 2003.  See Docket Entries Nos. 2 and 3.  Defendants subsequently moved for summary judgment on April 20, 2005, seeking dismissal of the Complaint in its entirety.[2]  See Docket Entry No. 126.  By Opinion and Order dated December 22, 2005, this Court granted Defendants' motion.  See Docket Entries Nos. 179 and 180.  Plaintiff filed a reconsideration motion on January

---

Plaintiff's three § 2241 petitions, three § 2255 petitions, two mandamus actions and seven Bivens actions (with the instant matter being one of these Bivens actions).  By now, Plaintiff is prohibited from bringing a civil action in forma pauperis, pursuant to 28 U.S.C. § 1915, unless he is under imminent danger of serious physical injury.  See 28 U.S.C. § 1915(g).  See Toolasprashad v. Williams, 07-5860 (JBS), Docket Entry No. 2 (discussing Plaintiff's "three strikes" status).

   [2]  The Court's brief summary of the pertinent procedural history omits from the discussion the blizzard of Plaintiff's motions produced during the years of litigation.  It shall suffice to mention that this matter has, as of now, 213 docket entries.

11, 2006.  <u>See</u> Docket Entry No. 183.  The Court addressed that motion in its August 8, 2006, Opinion and Order and dismissed all Plaintiff's claims stated in the Complaint with prejudice.  <u>See</u> Docket Entries Nos. 197 and 198.  The case was not closed, however, because of Plaintiff's: (a) motion to supplement the Complaint with additional allegations (asserting claims based on the events which took place after the Complaint was filed); (b) motion to reopen the case, which the Court construed as another motion for reconsideration.[3]  <u>See</u> Docket Entry No. 204.  On January 8, 2007, the Court issued an Order and Opinion denying these motions and terminating the case.  <u>See</u> Docket Entries Nos. 204 and 205.  After Plaintiff appealed this Court's decisions denying these motions, <u>see</u> Docket Entries Nos. 201, 206-08, the Court of Appeals affirmed the Court's determinations on August 21, 2007;[4] the Court of Appeals'

---

[3] In that second motion for reconsideration, Plaintiff did not re-challenge this Court's summary judgment; rather, Plaintiff invited this Court to "reconsider" the decision by the Court of Appeals for the Third Circuit dismissing Plaintiff's appeal.  <u>See</u> Docket Entry No. 202.

[4] The Court of Appeals observed, <u>inter alia</u>:

We agree with the District Court that the conditions in the commissary, while perhaps uncomfortable, did not rise to the level of an Eighth Amendment violation. . . . We [also] agree with the District Court that [Defendants] were entitled to summary judgment on [Plaintiff's] claim that he was transferred from his [commissary] job in retaliation for filing grievances.

3

      affirmance warranted this Court's January 3, 2008 entry of an appropriate Order on mandate. <u>See</u> Docket Entry No. 211.

4. Nine months passed by since the Court's order on mandate (and more than two years passed since this Court's August 8, 2006, order denying Petitioner's motion for reconsideration of the Court's summary judgment decision which resolved the case in favor of Defendants). However, on September 30, 2008, Plaintiff filed another motion to reconsider the Court's summary judgment decision and seeking to reopen this matter. <u>See</u> Docket Entry No. 212. On October 20, 2008, Defendants filed their opposition to this latest motion. <u>See</u> Docket Entry No. 213. Consequently, this recently-generated Plaintiff's motion ("Motion") and Defendants opposition ("Opposition") are now before this Court and subject to the instant ruling.

5. The Motion is a thirty-four page submission. <u>See</u> Docket Entry No. 212. The first twelve pages are taken by the document titled "Petitioner's Combined Motion and Brief Pursuant to F.R.Civ.P. 59(e) and 60(b)," while the remainder consists of copies of various documents attached, apparently, as exhibits in support of the "Combined Motion and Brief." <u>See</u> <u>id.</u> The "Combined Motion and Brief" opens with a narrative titled "History" and provides a repeat of

---

<u>Toolasprashad v. Wright</u>, 06-3784, at 3 (Aug. 21, 2007).

Plaintiff's perception of the underlying events; that perception directly contradicts the findings made by this Court and the Court of Appeals.  See id. at 2-3 (effectively re-asserting Plaintiff's Eighth Amendment and retaliation claims, as well as alleging that this Court's findings in favor of Defendants were made "despite a mountain of evidence" and claiming that both this Court and the Court of Appeals failed to review this "mountain of evidence").  The next section of the "Combined Motion and Brief" sets forth the jurisdictional basis Plaintiff seeks to utilize for his Motion; that section could be summarized in the dozen words used by Plaintiff at the closure of the section: "[D]efendants utilized fraudulent means resulting in continuing fraud upon the district court."  Id. at 3-4.  The following section, titled "Newly Discovered Evidence" elaborate to the aforesaid conclusion.  See id. at 4-6.  The narrative provided by that section expresses Plaintiff's opinion that one of the reports submitted by Defendants (presumably, for the purposes of the Court's summary judgment ruling) "was a one-sided document prepared by the [D]efendants themselves,"[5] id. at 4 (emphasis removed), and

---

[5]  It appears that Plaintiff utilizes the term "one-sided" in the sense that the document, instead of expressing Plaintiff's position or making statements favorable to Plaintiff's cause, verified Defendants' position contradicting Plaintiff's assertions.

5

that "[D]efendants outright stated to [Plaintiff] that they have lied and covered up the evidence [and] utilized phantom policies which [Plaintiff] would have easily proved [as such had he been given a chance to do so] at a trial."[6]  Id. (emphasis removed).  With that, Plaintiff proceeds to: (a) assert that Defendants' report was "fabricated by [D]efendant Davis in the high tradition of covering up the truth," id. at 5; and (b) informs the Court that Plaintiff

> was notified that the case was reopened for further investigation . . . after the Office of the Inspector General . . . and the BOP Office of Internal Affairs (OIA) became involved, [and] in a letter dated December 5, 2007, [the] Deputy Inspector General [i]nformed the Honorable Charles Schumer, [a] United States Senator, that OIA was investigating the case.  Also, in a letter dated March 26, 2008, [a] BOP Assistant Director/General Counsel to Senator Schumer advised [an unspecified someone] that such violations are being investigated.  Additionally, in February/March [of] 2008, [Plaintiff] was advised [by a] Supervisory Investigative Agent that the [Defendants' report] investigation was reopened. . . . . [This Supervisory Investigative Agent] advised [Plaintiff] that thus far from his review of the documents, [the Agent] has discovered numerous serious violations by the [D]efendants [and Defendants'] criminal acts. [The Agent also intimated to Plaintiff that] 'this is bigger' than him."

Id. at 5.

---

[6]  The "Combined Motion and Brief" does not intimate who was the Defendant that made this statement to Plaintiff on behalf of himself/herself and other Defendants, or the date or any other circumstances of this statement.  See generally, Docket Entry No. 212.

6

The next section of the "Combined Motion and Brief" is titled "Exhaustion of Remedies"; this section discusses Plaintiff's efforts to gain access to the result (either final or preliminary) of the investigation allegedly conducted with regard to Defendants' false report.  See id. at 6-9.  However, this discussion suggests that: (a) the actual investigation being conducted stemmed from Plaintiff's filing of grievance(s) with respect to conduct of unspecified prison officers employed at the Facility; (b) Plaintiff's grievance(s) asserted unspecified serious misconduct by these prison officers; and (c) Plaintiff was duly notified that "[i]nmates have no entitlement to the outcome of disposition of an investigation into staff misconduct nor to know by whom it is being handled."  See id. at 7-9.  The following section of the "Combined Motion and Brief," titled "Discovery Required," finally reveals the gist of Plaintiff's argument, which appears to be based on the following chain of Plaintiff's deductions: (a) if the BOP concedes that an investigation of Plaintiff's allegations of serious misconduct by prison officers is being conducted, it must mean the BOP and investigating officials' knowledge that a serious misconduct actually took place; (b) if a serious misconduct actually took place, it must mean that this serious misconduct was directly related

7

to the report submitted by Defendants for the purposes of this Court's summary judgment; (c) if a serious misconduct is directly related to the report submitted by Defendants for the purposes of this Court's summary judgment, it must mean the report was falsified; (d) if the report was falsified, it must mean that this Court's ruling was reached on the basis of falsified facts; (e) if this Court's ruling was reached on the basis of falsified facts, the Court's decision must be vacated; (f) is the Court's decision has to be vacated, Plaintiff must be allowed access to the information as to the outcome of the current investigation to provide the Court with evidence warranting the vacatur; and (g) if Plaintiff is allowed access to the information as to the outcome of the current investigation, this matter shall be reopened, and an order shall be issued directing discovery.  See id. at 9-10 (attempting to convince the Court that Plaintiff is likely to discover "new" evidence showing that Defendants falsified their report submitted for the purposes of this Court's summary judgment).  The final section of the "Combined Motion and Brief" asserts that Plaintiff is entitled to such discovery under Rules 59 or 60.  See id. at 11.  In alternative, the final section requests this Court to instruct Plaintiff as to the legal bases that Plaintiff need to assert in order to obtain leave

8

       to conduct such discovery and to start looking for evidence that Defendants' report was falsified. See id. Simply put, Plaintiff requests this Court's to either presume that Defendants' falsified the evidence submitted during the summary judgment stage or to find some other way that would allow Plaintiff to prevail in this long-closed case. See id.

6.    The remaining twenty-one pages of Plaintiff's submission provide the Court with copies of various documents. See id. at 13-34. This compilation does not include any correspondence or verifications of discussions alleged on page five of the"Combined Motion and Brief," i.e., allegations of senatorial reports, confessions by the Supervisory Investigative Agent, etc.[7] See id. The bulk of the attachments replicates: (a) Plaintiff's grievances and demands of disclosure of final or preliminary results reached by prison officials upon investigation of Plaintiff's grievances, see id. at 13-20 and 32; (b) copies of Plaintiff's previous grievances, see id. at 18, 22-23; (c) an order and letter issued by the Magistrate Judge assigned to this matter during the time when the case was

---

[7] The Court notes, in passing, that a litigant's allegation that letters (or reports) were mailed to (or by) a legislative official does not lend credence to the litigant's submission, since the courts render their decisions on the basis of facts and law rather than out of desire to impress legislators.

proceeding toward summary judgment, see id. at 25-31; and (d) an affidavit (executed by an inmate housed at the same facility as Plaintiff) asserting that (i) Plaintiff was subjected to such prison officers' acts as "flipping their middle finger at him, knocking on the window at the laundry when he walked by," and (ii) prison officers laughed while discussing the rumor that Plaintiff was fired from his commissary job as a result of filing administrative grievances.  See id. at 33-34.  The correspondence from administrative officials replicated in Plaintiff's attachments is limited solely to three documents: (a) a letter from the warden informing Plaintiff that Plaintiff's "allegations concerning the conduct of staff members, [which were] referred to the proper authorities for review and final disposition[; t]he result of this review [would] not be disclosed to [Plaintiff, but a]ny actions deemed appropriate [would] be taken"; id. at 17; (b) a letter from the Regional Office stating that Petitioner's grievance contains "allegations of serious misconduct," expressing the BOP's position that such serious allegations "must be referred for investigation" and assuring Plaintiff that such reference to proper authorities was duly made, plus informing Plaintiff that the Regional Office was confident that "a thorough investigation [would] be conducted," and

10

    reiterating the warden's point that inmates were not entitled to be informed about the outcome of internal investigations; id. at 21; and (c) a letter from the National Inmate Appeals reiterating to Plaintiff that the BOP takes allegations of staff misconduct seriously and clarifying to Plaintiff that the investigation of Plaintiff's allegations was conducted pursuant to the BOP's P.S. 3420.09 ("Standards of Employee Conduct").  See id. at 24.  The letter from the National Inmate Appeals repeats the point that inmates are not entitled to information as to the outcomes of internal investigations.[8]  See id.

7. Unlike Plaintiff's lengthy submission, Defendants' Opposition to Plaintiff's Motion is merely four-and-a-half pages.  See Docket Entry No. 213.  In their Opposition, Defendants raise the following four points: (a) Plaintiff's motion is time-barred for the purposes of Rule 59, see id. at 2-3; (b) under Rule 59, the motion has no substantive basis, see id. at 3; (c) the standard set forth by Rule 60 does not warrant grant of Plaintiff's motion, see id. at 3-

---

[8] The warden, Regional Office and the National Inmate Appeals' unambiguous statements (that the information obtained and conclusions reach upon administrative investigations are not subject to disclosure to inmates) appear to be in direct contradiction to Plaintiff's assertion that a "Supervisory Investigative Agent] advised [Plaintiff] that [the Agent] has discovered numerous serious violations by the [D]efendants [and Defendants'] criminal acts."  Docket Entry No. 212, at 5.

11

6; and (d) Plaintiff's motion is untimely for the purposes of Rule 60. See id. at 5. The Court denies Plaintiff's Motion on the grounds of Defendants' succinctly stated factual and legal arguments and sees no reason to reiterate these arguments in the instant Order: an interested reader is referred to the the content of Defendants' Opposition. The Court, however, finds it appropriate to emphasize, especially, Defendants' point that:

> To reopen a judgment under Rule 60(b)(3), specifically, a plaintiff *must show, by clear and convincing evidence*: "(1) that the adverse party engaged in fraud or misconduct; and (2) that is conduct prevented the moving party from fully and fairly presenting this case.["] Bamigbade v. City of Newark, 2006 U.S. Dist. LEXIS 3534, at *7 (D.N.J. Jan. 30, 2006)(citing Stridiron v. Stridiron, 698 F.2d 204, 207 (3d Cir. 1983); see also Brown v. Penn R.R. Co., 282 F.2d 522, 527 (3d Cir. 1960). The apparent basis for [P]laintiff's Motion [is] his unsubstantiated belief that a report of was fabricated and assertion that the BOP is investigating some of allegations of staff misconduct, [however, this belief] does not support the reopening of this long-closed matter . . . .

Id. at 5 (emphasis supplied).

True indeed. Here, Plaintiff's chain of deductions presents nothing but a self-serving conjecture built on a mere fact that the BOP is investigating Plaintiff's grievances alleging serious misconduct by prison officials. However, the fact that the BOP performs its administrative obligations responsibly and refers an inmate's grievance for

12

investigation pursuant to the dictates of an applicable program statement in no way indicates an agency's finding of present or past violations, same as this fact does not suggest that these violations were actually related to the issues addressed by this Court during the litigation of this case, or that Defendants actually concealed any violations by falsifying any documents. In sum, Plaintiff's allegations are nothing but a request for leave to conduct a "fishing expedition" in hope that Plaintiff might somehow detect a piece of information which he would be able to style as evidence of Defendants' fraud in the instant matter. However, one's aspirations to detect evidence of fraud hardly present clear and convincing evidence of such fraud: an inmate cannot be allowed to re-litigate his claims by "manufacturing" evidence through a simple filing an administrative grievance and then conveniently asserting that the agency's current proper actions as to the grievance are indicative of the agency's fraud in a long-closed case. Any holding otherwise would create an anomalous incentive for the BOP not to perform its administrative duties diligently, <u>i.e.</u>, an incentive to ignore inmates' complaints alleging staff misconduct.

8. Finally, the Court takes this opportunity to point out to Plaintiff that his status as a <u>pro se</u> litigant does not

transform this Court into Plaintiff's counsel.  While it is true that the courts construe pro se submissions liberally and with a measure of tolerance, see Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998), there is no statute, procedural rule, or case law suggesting that a federal court's mandate allows it (moreover obligates it) to instruct a pro se litigant as to how to prevail against his/her adversary. See, e.g., Pliler v. Ford, 542 U.S. 225, 231-32 (2004) ("District judges have no obligation to act as counsel or paralegal to pro se litigants") (citing Martinez v. Court of Appeal of Cal., Fourth Appellate Dist., 528 U.S. 152, 162 (2000), and McKaskle v. Wiggins, 465 U.S. 168, 183-84 (1984)).  Indeed, such "assistance" by a court could be construed as evidence of undue judicial bias against the other litigant.

The accompanying Order will be entered denying reopening and reconsideration.

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
U.S. District Judge

Dated:     **November 3, 2008**

14